UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

PROTECT OUR AQUIFER,
ALABAMA CENTER FOR SUSTAINABLE
ENERGY (dba ENERGY ALABAMA), and
APPALACHIAN VOICES,
Plaintiffs,

       v.                                        No.2:20-cv-02615-TLP-atc

TENNESSEE VALLEY AUTHORITY,
Defendant.

## ANSWER OF TENNESSEE VALLEY AUTHORITY

Pursuant to the Federal Rules of Civil Procedure, Defendant Tennessee Valley Authority

("TVA") answers Plaintiff's Amended Complaint (Doc. 17) as follows.

### First Defense

Responding to the numbered allegations of Plaintiffs' Amended Complaint, TVA states

as follows:

### NATURE OF THE ACTION

1.      Denied.

2.      Denied.

3.      Denied.

4.      Answering the allegations of the first sentence of paragraph 4, TVA admits that in

August of 2019, TVA's Board of Directors resolved "that, contingent upon satisfactory

completion of any required environmental reviews, the Board of Directors . . . approve[d] the

implementation of a standard long-term agreement consistent with the Standard Elements set

forth in the Memorandum [from the Executive Vice President and Chief Financial Officer]" and

"delegate[d] authorities to the Chief Executive Officer to implement and change, with oversight,

the Standard Elements for such agreements as described in the Memorandum." The remaining

allegations contained within paragraph 4 are denied.

5.      TVA denies the allegations of paragraph 5, and TVA further states that the cited

case law speaks for itself.

6.      Denied.

7.      Denied.

8.      TVA admits that Plaintiffs seek the relief stated, but TVA denies that such relief

is appropriate and that the Court has subject matter jurisdiction to award the requested relief.

9.      TVA admits the allegations of the first sentence of paragraph 9. TVA denies the

allegations of the second sentence of paragraph 9.

10.      Answering the allegations of the first sentence of paragraph 10, TVA admits that

the Administrative Procedure Act, which speaks for itself, authorizes judicial review consistent

with the statutory terms and specifies the scope of review, including the nature of relief to be

awarded in appropriate cases, as set forth in the statute; and TVA further admits that the

Declaratory Judgment Act, which speaks for itself, provides that any Court of the United States,

in a case of actual controversy within its jurisdiction, "may declare the rights and other legal

relations of any interested party seeking such declaration." The remaining allegations of the first

sentence of paragraph 10 are denied. The allegations of the second sentence of paragraph 10 are

denied. To the extent that there are any remaining allegations contained within this paragraph,

they are denied as framed.

11.      Admitted.

12.      TVA denies the the allegations of the first sentence of paragraph 12; however,

TVA admits that venue over this action is proper under 28 U.S.C. § 1391(b)(2). The allegations

of the second sentence of paragraph 12 are admitted. The allegations of the third sentence of paragraph 12 are denied. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

13.    TVA denies the allegations of the first, second, third, fifth, and sixth sentences of paragraph 13. TVA admits the allegations of the fourth sentence of paragraph 13. Upon information and belief, TVA admits the allegation of the seventh sentence of paragraph 13. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

14.    Admitted.

15.    Admitted.

16.    TVA denies the allegations of the first sentence of paragraph 16. TVA admits the allegations of the second sentence of paragraph 16.

17.    Admitted, except that TVA further states it sells power to 57 large energy-intensive customers and seven federal installations.

18.    Admitted.

19.    Answering the allegations of paragraph 19, TVA admits that 59% of its generating portfolio is carbon free, with 41% nuclear, 14% coal, 27% gas, 13% hydro, 3% wind/solar, and 2% energy efficiency. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

20.    TVA admits that the allegation of paragraph 20 was true in October 2018, but denies that this is true today because currently TVA operates 25 coal-fired generating units at five plants.

21.    Admitted.

22.     Admitted.

23.     Admitted.

24.     Answering the allegations of paragraph 24, TVA admits that it has a diverse power generation mix (41% nuclear, 14% coal, 27% gas, 13% hydro, 3% wind/solar, and 2% energy efficiency); that TVA's current operating solar capacity is approximately 416 megawatts; that, for FY 2020, TVA contracted for nearly 1600 megawatts of solar capacity and more than 1240 megawatts of wind capacity; that, for FY 2021, TVA contracted for 964 megawatts of utility scale solar capacity; and that TVA anticipates adding 10,000 megawatts of solar by 2035. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

25.     Denied.

26.     Admitted.

27.     Answering the allegations of paragraph 27, TVA admits that its power operations have an environmental impact; that, in furtherance of TVA's environmental stewardship mission, the impact is decreasing over time (*see* FY2020 Sustainability Report, Environmental Impact Snapshot, *available at* tva.com/sustainability report); that TVA is committed to reducing further the environmental impact from its operations; and that, where required, TVA complies with NEPA to assess the potential environmental impact of proposed TVA actions. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

28.     Denied.

29.     Admitted.

30.     TVA admits that this is an accurately quoted excerpt from TVA's 2019 IRP, Volume II, Section 4.3.2, with notable omissions from the original as indicated by two ellipses.

To the extent that there are any remaining allegations contained within this paragraph, they are denied.

31.     Answering the allegations of paragraph 31, TVA admits that TVA's coal, gas, and diesel generation assets emit greenhouse gases and that TVA's continuing efforts to reduce its reliance on carbon-emitting generation assets has resulted in a 63% reduction in total mass carbon emissions since 2005.

32.     Answering the allegations of paragraph 32, TVA admits that, as of September 30, 2018, its transmission system consisted of 16,156 circuit miles of transmission lines and 508 power stations and switchyards, and TVA further admits that maintenance and operation of its transmission systems includes considerations related to land use, vegetation, and wildlife. All allegations of paragraph 32 not expressly admitted are denied.

33.     Answering the allegations of paragraph 33, TVA admits that it uses billions of gallons of water annually and that it returns 99.2% of the water it uses.

34.     Answering the allegations of paragraph 34, TVA admits that its water use affects the quantity of Tennessee's aquifers and surface water resources that the effects are not significant, and that TVA returns 99.2% of the water it withdraws for thermoelectric power production back into the Tennessee River. TVA further admits that its water use does not significantly affect the quality of Tennessee's aquifers and surface water resources. Except as expressly admitted, the allegations of paragraph 34 are denied.

35.     TVA admits that it sets wholesale rates for electricity for its Local Power Companies and states that electricity rates are but one of many factors affecting energy efficiency, distributed energy resources, energy burden, and economic activity in the region.

36.     Admitted.

37.     Answering the allegations of paragraph 37, TVA states that the cited statutory provision speaks for itself and admits that Plaintiffs appear to have quoted from it accurately.

38.     Answering the allegations of paragraph 38, TVA states that the cited statutory provision speaks for itself and admits that Plaintiffs appear to have quoted from it accurately.

39.     Answering the allegations of paragraph 39, TVA states that the cited statutory and regulatory provision speak for themselves and admits that Plaintiffs appear to have quoted from them accurately.

40.     Answering the allegations of paragraph 40, TVA states that the cited statutory provision speaks for itself and admits that Plaintiffs appear to have quoted from it accurately.

41.     Answering the allegations of paragraph 41, TVA states that the cited authorities speak for themselves and admits that Plaintiffs appear to have quoted from them accurately.

42.     Answering the allegations of paragraph 42, TVA states that the cited regulations speak for themselves and admits that Plaintiffs appear to have quoted from them accurately.

43.     Answering the allegations of paragraph 43, TVA states that the cited regulation speaks for itself and admits that Plaintiffs appear to have quoted from it accurately.

44.     Answering the allegations of paragraph 44, TVA states that the cited regulations speak for themselves and admits that Plaintiffs appear to have quoted from them accurately.

45.     Admitted.

46.     Answering the allegations of the first sentence of paragraph 46, TVA states that Plaintiffs appear to have quoted the excerpted portion of 16 U.S.C. § 831i correctly but denies the Plaintiffs' characterization of the authority granted in 16 U.S.C. § 831i. TVA denies the allegation in the second sentence of paragraph 46.

47.     Answering the allegations of paragraph 47, TVA states that the cited statutory provisions speak for themselves and admits that Plaintiffs appear to have quoted and/or paraphrased from them accurately. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

48.     Answering the allegations of paragraph 48, TVA states that the cited statutory provisions speak for themselves and admits that Plaintiffs appear to have quoted and/or paraphrased from them accurately. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

49.     Answering the allegations of paragraph 49, TVA admits that Congress amended in the TVA Act in 2004 and that those amendments specified the qualifications necessary for an individual to be eligible to be appointed as a member of the TVA Board, including the requirement that an individual appointed as a member of the TVA Board "shall affirm support for the objectives and missions of the Corporation, including being a national leader in technological innovation, low-cost power, and environmental stewardship," 16 U.S.C. § 831a(b)(5).

50.     Admitted.

51.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 51, so those allegations are denied.

52.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 52, so those allegations are denied.

53.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 53, so those allegations are denied.

54.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 54, so those allegations are denied.

55.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 55, so those allegations are denied.

56.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 56, so those allegations are denied.

57.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 57, so those allegations are denied.

58.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 58, so those allegations are denied.

59.     TVA admits that its June 30, 2021 10Q observes that "more consumers and businesses are demanding cleaner energy." To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

60.     Admitted.

61.     Admitted.

62.     Denied.

63.     Answering the allegations of paragraph 63, TVA denies that its "filings with the Securities Exchange Commission expressly acknowledge that customer preference for renewables and other DER represents a competitive business risk."

64.     Admitted.

65.     Admitted.

66.     Denied.

67.     Admitted.

68.     Admitted.

69.     Answering the allegations of paragraph 69, TVA admits that, in early 2019,

MLGW embarked on an extensive evaluation of its power supply options, including

consideration of whether to remain a customer of TVA, and that information related thereto is

available on MLGW's website.

70.     TVA admits that MLGW and other outside organizations have commissioned

studies examining alternate power sources. All remaining allegations of paragraph 70 not

expressly admitted are denied.

71.     The allegations of the first sentence of paragraph 71 are admitted. Answering the

allegations of the remaining sentences of paragraph 71, TVA admits that the Siemens IRP states

that it "is designed to provide MLGW with the information needed to decide on the tradeoffs

associated with the Self-Supply plus MISO options and the TVA options"; that the Siemens IRP

states that "[t]he selection of the best portfolios for MLGW is not simply a cost-based decision"

and that "risk, sustainability, resilience, reliability, and economic impacts" are factors; that the

Siemens IRP is not a decision-making tool but rather identifies a range of options based on

various assumptions and caveats; that the Siemens IRP characterized a set of potential savings

that may exist if MLGW can successfully execute a complex set of investments, develop the core

competencies to operate under a completely new business model, and navigate the many and

significant embedded risks; that included within the Siemens IRP was one portfolio projecting a

potential savings of $122 million per year over MLGW's current state but that portfolio "had

significant load shedding and is the worst of the selected portfolios regarding reliability," and

another portfolio that emphasized solar and wind generation but sacrificed reliability. TVA

further states that the Siemens IRP concluded that "[a]nother important consideration is the use

of water in Shelby County" and that "[i]n this measure, TVA performs best" because "[a]ll Portfolios increase the water consumption" within Shelby County. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

72.     Answering the allegations of paragraph 72, TVA states that it has offered the Long Term Partnership Agreement to MLGW and that TVA has proposed additional value opportunities to MLGW under its current contract.

73.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 73, so those allegations are denied.

74.     TVA admits that MLGW has not entered into a Long Term Partnership Agreement with TVA. Answering the remaining allegations of paragraph 74, TVA denies that it enters into Never-ending Contracts. All allegations of paragraph 74 not expressly admitted are denied.

75.     The allegations of the first sentence of paragraph 75 are admitted. Upon information and belief, the allegations of the second sentence of paragraph 75 are admitted.

76.     Admitted.

77.     Admitted.

78.     TVA admits the allegations in the first sentence of paragraph 78. Answering the allegations of the second sentence of paragraph 78, TVA admits that it offered the Long Term Partnership Agreement to VEC. All allegations of paragraph 78 not expressly admitted are denied.

79.     Answering the allegations of paragraph 79, TVA admits that VEC has not entered into a Long Term Partnership Agreement with TVA. Answering the remaining allegations of

paragraph 79, TVA denies that it enters into Never-ending Contracts. All allegations of paragraph 79 not expressly admitted are denied.

80.     Denied.

81.     Denied.

82.     Admitted.

83.     TVA admits that TVA prepared the Long Term Partnership Agreement in negotiations with its LPCs.

84.     TVA denies the allegation of the first sentence of paragraph 84. TVA admits that the second sentence is an accurate quotation of a portion of the Long Term Partnership Agreement.

85.     Answering the allegations of the first sentence of paragraph 85, TVA admits that the Long Term Partnership Agreement provides that, "[n]otwithstanding any other provision of this section, [Cooperative/Municipality] may terminate this contract at any time upon not less than 20 years' prior written notice." Answering the allegations of the second sentence of paragraph 85, TVA admits that the Long Term Partnership Agreement provides that, "[i]f [Cooperative/Municipality] delivers a notice of termination to TVA, as stated above, then from and after the date of receipt of such notice, TVA will have no obligation to make or complete any additions to or change in any transformation or transmission facilities for service to [Cooperative/Municipality], unless (by means of a fully-executed amendment to this contract) [Cooperative/Municipality] agrees to reimburse TVA for its non-recoverable costs in connection with the making or completion of such additions or changes." TVA admits that the third sentence of paragraph 85 is an accurate quotation of a portion of the Long Term Partnership Agreement. All allegations of paragraph 85 not expressly admitted are denied.

86.    Denied.

87.    Denied.

88.    Answering the allegations of the first sentence of paragraph 88, TVA admits that the Long Term Partnership Agreement is an amendment to existing all-requirement contracts. Answering the allegations of the second and third sentences of paragraph 88, TVA admits that Section 3(b)(2) defines actions on the Distributor's part that would constitute a default under the Long Term Partnership Agreement; that Section 3(e) provides for remedies in the event of default by either party; and that Section 3(e)(1) provides that "[D]istributor must pay TVA an amount equal to TVA's losses of revenue and load served, and for all actual expenses incurred by TVA and resulting from Distributor event(s) of default (subsection 3(b) of this Agreement), including attorneys' fees and other regulatory or administrative costs, measured from the date that any event of default first occurs, and over the remaining term of the Power Contract." All allegations of paragraph 88 not expressly admitted are denied.

89.    TVA admits that the second sentence of paragraph 89 is an accurate quotation of a portion of the Long Term Partnership Agreement. All allegations of paragraph 89 not expressly admitted are denied.

90.    Denied.

91.    TVA admits that paragraph 91 contains an accurate quotation of a portion of Section 2(d) of the Long Term Partnership Agreement, but TVA denies that the Long Term Partnership Agreement addresses TVA's relationships with those distributors who are not participating in the Long Term Partnership Agreement. All remaining allegations of paragraph 91 are denied.

92.    Denied.

93.     Denied.

94.     Denied.

95.     Answering the allegations of paragraph 95, TVA admits that TVA's CFO prepared the July 31, 2019 memorandum to TVA's Board of Directors. Except as expressly admitted, the allegations of paragraph 95 are denied.

96.     Admitted.

97.     Admitted.

98.     Admitted.

99.     Answering the allegations of paragraph 99, TVA admits that the excerpted language is accurately quoted but denies that TVA management rejected the alternative of retaining the existing termination notice periods which still exist. Except as expressly admitted, the allegations of paragraph 99 are denied.

100.    Denied.

101.    Admitted.

102.    Answering the allegations of paragraph 102, TVA admits that, by August 2019, it was aware that MLGW was evaluating its power supply options, including consideration of whether to remain a customer of TVA. Except as expressly admitted, the allegations of paragraph 102 are denied.

103.    Denied.

104.    Admitted.

105.    Admitted.

106.    TVA denies the allegations of the first sentence of paragraph 106. Answering the allegations of the second sentence of paragraph 106, TVA admits that Nashville Electric Service

signed the Long Term Partnership Agreement on August 28, 2019. Except as expressly admitted, the allegations of paragraph 106 are denied.

107.    Denied.

108.    TVA denies the allegations of the first sentence of paragraph 108. Answering the allegations of the second sentence of paragraph 108, TVA admits that, as of September 30, 2019, 131 of 153 local distributors across the TVA region had signed the Long Term Partnership Agreement. Answering the allegations of the third sentence of paragraph 108, TVA admits that, as of April 3, 2020, 138 of TVA's local distributors had signed the Long Term Partnership Agreement. Except as expressly admitted, the allegations of paragraph 108 are denied.

109.    Denied.

110.    Admitted.

111.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 111, so those allegations are denied.

112.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 112, so those allegations are denied.

113.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 113, so those allegations are denied.

114.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 114, so those allegations are denied.

115.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 115, so those allegations are denied.

116.    Answering the allegations of paragraph 116, TVA admits that the 2019 IRP and accompanying Final Environmental Impact Statement were released on June 28, 2019, and that

the TVA Board approved the 2019 IRP and associated Final Environmental Impact Statement at its August 22, 2019 meeting.

117.    Admitted.

118.    Answering the allegations of paragraph 118, TVA admits that the IRP and EIS were completed before the Long Term Partnership Agreement. Except as expressly admitted, the allegations of paragraph 118 are denied.

119.    Answering the allegations of paragraph 119, TVA admits that Plaintiffs' description of the memorandum referenced therein is inaccurate in multiple respects, and therefore, TVA denies the allegations of paragraph 119.

120.    Answering the allegations of paragraph 120, TVA admits that the IRP and EIS analyze a scenario that contemplates reduced load. Except as expressly admitted, the allegations of paragraph 120 are denied.

121.    Denied.

122.    Denied.

123.    Answering the allegations of paragraph 123, TVA admits that, in accordance with NEPA, the no action alternative (the Base Case) represents the status quo at the time the IRP EIS was undertaken. Except as expressly admitted, the allegations of paragraph 123 are denied.

124.    Answering the allegations of the first sentence of paragraph 124, TVA admits that, in accordance with NEPA, TVA performed an Environmental Assessment and issued a Finding of No Significant Impact addressing TVA's proposal to provide flexible power generation options to its local power company customers that have signed the Long Term Partnership Agreement. Answering the allegations of the second sentence of paragraph 124, TVA denies that NEPA required TVA to conduct an environmental review of the Long Term

Partnership Agreement. The remaining allegations of paragraph 124 are denied. Except as expressly admitted, the allegations of paragraph 124 are denied.

125.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 125, so those allegations are denied.

126.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 126, so those allegations are denied.

127.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 127, so those allegations are denied.

128.    Upon information and belief, the allegations of the first two sentences of paragraph 128 are admitted. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in the third, fourth, and fifth sentences of paragraph 128, so those allegations are denied.

129.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 129, so those allegations are denied.

130.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 130, so those allegations are denied.

131.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 131, so those allegations are denied.

132.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence in paragraph 132, so those allegations are denied. Answering the allegations of the second sentence of paragraph 132, TVA admits that, in August 2014, TVA issued a Final Environmental Assessment and Finding of No Significant Impact for a project to replace the then-existing coal-fired plant at TVA's Allen Fossil Plant with a natural

gas-fired combined cycle plant in Shelby County, Tennessee; that the 2014 EA explored two alternatives: Alternative A – No Action, and Alternative B – Retire ALF and construct a Natural Gas-Fired Facility; that subsequent to the issuance of the FONSI, TVA made a decision to construct a Combined Cycle Facility; that as proposed in the EA, the Allen CC plant would have a recirculating cooling water system for which TVA would utilize gray water supplied by the City of Memphis Public Works Maxson wastewater treatment plant; that during the detailed engineering phase of the project, TVA found that substantial equipment and annual routine maintenance would be required to treat and prepare that gray water to make it suitable to use as cooling water for the Allen CC Plant; and that in accordance with NEPA, TVA supplemented the EA in April 2016 in which TVA proposed two alternative methods for obtaining cooling water for the Allen CC plant: drilling up to five wells to draw groundwater to be used for cooling water or, alternatively, purchasing potable water from MLGW to obtain adequate cooling water. Except as expressly admitted, the allegations of paragraph 132 are denied.

133.    Upon information and belief, the allegations in paragraph 133 are admitted.

134.    Answering the allegations of the first sentence of paragraph 134, TVA admits that it conducted pump testing in order to determine whether there was a hydrological connection between the alluvial aquifer and Memphis aquifer, that TVA tests the Memphis aquifer quarterly and has not found that there is contamination from the shallow alluvial aquifer, and that one of the purposes of the extraction and treatment system for remediating groundwater is to "provide hydraulic control to help minimize the potential for impacted groundwater to migrate toward sensitive receptors such as McKellar Lake and the Memphis aquifer." Answering the allegations of the second sentence of paragraph 134, TVA admits that, in 2018, the United States Geological Survey in cooperation with the University of Memphis, Center for Applied Earth Science and

Engineering Research, issued a Preliminary Evaluation of the Hydrogeology and Groundwater Quality of the Mississippi River Valley Alluvial Aquifer and Memphis Aquifer at the Tennessee Valley Authority Allen Power Plants, Shelby County, Tennessee, which concluded that the Mississippi River Valley alluvial and Memphis aquifers are hydraulically connected near the TVA plant area. Except as expressly admitted, the allegations of paragraph 134 are denied.

135.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 135, so those allegations are denied.

136.    Answering the allegations of the first sentence of paragraph 136, TVA admits that, in 2018, TVA announced its commitment to not use the wells in the Memphis Sand Aquifer at the Allen CC plant, that the wells had been tested to monitor water quality and the results, all indicating no plant-related contamination, were provided to TDEC and to the Shelby County Water Board, that TVA purchases all water necessary to operate the Allen CC plant from MLGW, and that TVA had built four large water tanks at the Allen CC plant to store water for peak seasons (winter and summer). Upon information and belief, TVA admits the allegations of the second and third sentences of paragraph 136, and TVA further admits that, in the 2016 Supplemental EA for the Allen CC plant, TVA studied the alternative of purchasing potable water from MLGW to obtain adequate cooling water for the Allen CC plant and concluded that "[s]ignificant impacts to the Memphis Sands aquifer are not expected under this alternative." Except as expressly admitted, the allegations of paragraph 136 are denied.

137.    Upon information and belief, the allegations in paragraph 137 are admitted, except that TVA denies that Plaintiffs have characterized correctly TVA's "original plan of operating the Allen Gas Plant with recycled water" and, therefore, TVA denies that portion of the allegations of paragraph 137.

18

138.    Admitted.

139.    Answering the allegations of the first sentence of paragraph 139, TVA admits that Protect our Aquifer has utilized information from environmental review documents prepared on behalf of TVA; however, TVA is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of the first sentence of paragraph 139, so those remaining allegations are denied. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the second sentence of paragraph 139, so those allegations are denied.

140.    Upon information and belief, the allegations in paragraph 140 are admitted.

141.    Denied.

142.    Denied.

143.    Denied.

144.    Denied, except that TVA admits that MLGW is evaluating its power supply options, including consideration of whether to remain a customer of TVA and whether to sign the Long Term Partnership Agreement. Except as expressly admitted, the allegations of paragraph 144 are denied.

145.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in the first sentence of paragraph 145, so those allegations are denied. The allegations of the second sentence of paragraph 145 are denied. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in the third sentence of paragraph 145, so those allegations are denied.

146.    Denied.

147.    Denied.

148.     Denied.

149.     TVA admits that Exhibit G is as described but is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 149 and Exhibit G, so those allegations in both paragraph 149 and Exhibit G are denied.

150.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 150, so those allegations are denied.

151.     TVA admits that Exhibit H is as described but is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 151 and Exhibit H, so the allegations in both Paragraph 151 and Exhibit H are denied.

152.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 152, so those allegations are denied.

153.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 153, so those allegations are denied.

154.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of sentence two of paragraph 154, so those allegations are denied. The allegations of sentences one, three, and four are denied.

155.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 155, so those allegations are denied.

156.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 156, so those allegations are denied.

157.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first two sentences of paragraph 157, so those allegations are denied. TVA denies the allegations of the third and fourth sentences of paragraph 157.

158.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 158, so those allegations are denied.

159.    Denied.

160.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 160, so those allegations are denied.

161.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 161, so those allegations are denied.

162.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 162, so those allegations are denied.

163.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 163, so those allegations are denied.

164.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of sentence 1 of paragraph 164, but admits those that allege comments made concerning TVA. Answering the allegations of the second and third sentences of paragraph 164, TVA admits that the Southern Environmental Law Center, on behalf of Energy Alabama and other groups, submitted comments to TVA on the draft Environmental Assessment for TVA's Power Supply Flexibility Proposal and that the commenters asserted that NEPA required TVA to perform an environmental review of the Long Term Partnership Agreement; however, TVA denies the truth of those assertions. Except as expressly admitted, the allegations of paragraph 164 are denied.

165.    TVA admits the allegations of sentence 1 of paragraph 165. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of

sentences two and three of paragraph 165, so those allegations are denied. TVA denies the allegations of the fourth sentence of paragraph 165.

166.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 166, so those allegations are denied. TVA admits the allegations of the last sentence of paragraph 166.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    The allegations of paragraph 171 are denied, except that TVA admits that the Huntsville Utility Board signed the Long Term Partnership Agreement.

172.    TVA denies the allegations of paragraph 172 as framed.

173.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 173, so those allegations are denied.

174.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first and second sentences of paragraph 174, so those allegations are denied. The allegation of the last sentence of paragraph 174 is denied.

175.    TVA admits that Exhibit I is a declaration by Daniel Tait, but is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in that declaration, and TVA denies all allegations of harm asserted by Mr. Tait and Energy Alabama in both paragraph 175 and Exhibit I. All allegations of paragraph 175 not specifically admitted are denied.

176.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 176, so those allegations are denied.

177.    TVA admits that Exhibit L is a declaration by Jonathon Rossow, but is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in that declaration; therefore, the allegations of both paragraph 177 and Exhibit L are denied.

178.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first four sentences of paragraph 178, so those allegations are denied. TVA admits the allegations of the last sentence of paragraph 178.

179.    TVA denies the allegations of the first two sentences of paragraph 179. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the last two sentences of paragraph 179, so those allegations are denied.

180.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 180, so those allegations are denied.

181.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first two sentences of paragraph 181, so those allegations are denied. Answering the allegations of the last sentence of paragraph 181, TVA states the Long Term Partnership Agreement did not trigger NEPA and that decisions about generating assets are determined by the Integrated Resource Plan not the Long Term Partnership Agreement. Except as expressly admitted, the allegations of paragraph 181 are denied.

182.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 182, so those allegations are denied. TVA denies the allegations of the last two sentences of paragraph 182.

183.    Denied.

184.    TVA admits that Exhibit K is a declaration by Randy Buckner, but is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in that declaration and in paragraph 184, so those allegations of both paragraph 184 and Exhibit K are denied.

185.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 185, so those allegations are denied.

186.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 186, so those allegations are denied.

187.    TVA denies the allegation in the first sentence of paragraph 187. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the remaining sentences of paragraph 187, so those allegations are denied.

188.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 188, so those allegations are denied.

189.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 189, so those allegations are denied.

190.    Denied.

191.    Denied.

192.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 192, so those allegations are denied.

193.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 193, so those allegations are denied.

194.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 194, so those allegations are denied.

195.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 195, so those allegations are denied.

196.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 196, so those allegations are denied.

197.    Upon information and belief, TVA admits the allegations of the first sentence of paragraph 197. Answering the allegations of the second sentence of paragraph 197, TVA admits that the Southern Environmental Law Center, on behalf of Appalachian Voices and other groups, submitted comments to TVA on the draft Environmental Assessment for TVA's Power Supply Flexibility Proposal and that the commenters asserted that NEPA required TVA to perform an environmental review of the Long Term Partnership Agreement; however, TVA denies the truth of those assertions. Upon information and belief, the allegations of the third sentence of paragraph 197 are admitted. Except as expressly admitted, the allegations of paragraph 197 are denied.

198.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 198, so those allegations are denied.

199.    Denied.

200.    Denied.

201.    Denied.

202.    Denied.

203.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 203, so those allegations are denied. The remaining allegations of paragraph 203 are denied.

204.    Denied.

205.    Denied.

206.    TVA denies the allegations of the first and second sentences of paragraph 206. TVA is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 206, so those allegations are denied.

207.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 207, so those allegations are denied. TVA denies the allegations in the second and third sentences of paragraph 207.

208.    TVA admits that Exhibits L and M are declarations from Rory McIlmoil and Brianna Knisley but is without knowledge or information sufficient to form a belief about the truth of the allegations contained in those declarations, so the allegations of paragraph 208 and Exhibits L and M are denied.

209.    TVA admits that Exhibit N is a declaration from William Kornrich, but is without knowledge or information sufficient to form a belief about the truth of the allegations contained in that declaration and paragraph 209, so those allegations of both paragraph 209 an Exhibit N are denied.

210.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 210, so those allegations are denied. TVA denies the allegations of the second and third sentences of paragraph 210.

211.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 211, so those allegations are denied. TVA denies the allegations of the second sentence of paragraph 211.

212.    TVA denies the allegations in the first and second sentences of paragraph 212. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the third sentence of paragraph 212, so those allegations are denied.

213.    TVA denies the allegations of the first sentence of paragraph 213. TVA is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 213 of the Complaint, so those allegations are denied.

214.    TVA admits that Exhibit O is a declaration from Prentice Lynn Tobey, but is without knowledge or information sufficient to form a belief about the truth of the allegations contained in that declaration or paragraph 214, so the allegations of both paragraph 214 and Exhibit O are denied.

215.    Denied.

216.    TVA admits that Powell Valley Electric Cooperative signed the Long Term Partnership Agreement in August 2019, but TVA is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of the first sentence of paragraph 216, so those remaining allegations are denied. The allegations of the second sentence of paragraph 216 are denied. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of paragraph 216, so those allegations are denied. Except as expressly admitted, the allegations of paragraph 216 are denied.

217.    Denied.

218.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first, second, and third sentences of paragraph 218, so those allegations are denied. TVA denies the allegations of the fourth and fifth sentences of paragraph 218.

219.   TVA admits that Exhibit P is a declaration from JoAnn McIntosh, but is without knowledge or information sufficient to form a belief about the truth of the allegations contained in that declaration or paragraph 219, so the allegations of both paragraph 219 and Exhibit P are denied.

220.   TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first, second, and fourth sentences of paragraph 220, so those allegations are denied. TVA denies the allegations of the third sentence of paragraph 220.

221.   TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 221, so those allegations are denied.

222.   TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 222, so those allegations are denied. TVA denies the allegations of the second and third sentences of paragraph 222.

223.   Denied.

224.   All responses stated above are incorporated herein by reference.

225.   Answering the allegations of paragraph 225, TVA admits that it is subject to NEPA and further states that the cited statutes and regulations speak for themselves.

226.   Answering the allegations of the first sentence of paragraph 226, TVA states the cited statutes and regulations speak for themselves. TVA admits the allegation in the second sentence of paragraph 226. TVA denies the allegations of the third sentence of paragraph 226.

227.   Denied.

228.   Denied.

229.   Denied.

230.   Denied.

231.    Denied.

232.    TVA denies that it has extended and increased reliance on coal and gas-fired power plants, and thus denies the allegations of paragraph 232.

233.    Denied.

234.    Denied.

235.    Denied.

236.    Denied, except that TVA states that the terms of the Long Term Partnership Agreement speaks for itself and that TVA resource decisions are not determined by the Long Term Partnership Agreement.

237.    Denied.

238.    Denied.

239.    Denied.

240.    Denied.

241.    All responses stated above are incorporated herein by reference.

242.    Admitted.

243.    Denied.

244.    TVA admits that the TVA Act authorizes TVA to enter into agreements for the sale of electric power, that the TVA Act contains provisions specifying the term(s) of TVA's contracts for the sale of electric power, and that the TVA Act provides that the TVA Board "is authorized to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purposes of [the TVA Act]." To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

245.    Denied.

246.    TVA denies the allegations of the first and third sentences of paragraph 246. Answering the allegations of the second sentence of paragraph 246, TVA admits that the Long Term Partnership Agreement provides that, "[n]otwithstanding any other provision of this section, [Cooperative/Municipality] may terminate this contract at any time upon not less than 20 years' prior written notice." Answering the allegations of the third sentence of paragraph 246, TVA admits that the Long Term Partnership Agreement provides that, "[i]f [Cooperative/Municipality] delivers a notice of termination to TVA, as stated above, then from and after the date of receipt of such notice, TVA will have no obligation to make or complete any additions to or change in any transformation or transmission facilities for service to [Cooperative/Municipality], unless (by means of a fully-executed amendment to this contract) [Cooperative/Municipality] agrees to reimburse TVA for its non-recoverable costs in connection with the making or completion of such additions or changes." TVA denies the allegations of the fourth sentence of paragraph 246. To the extent that there are any remaining allegations contained within this paragraph, they are denied as framed.

247.    Denied.

248.    Denied.

249.    Answering the allegations of paragraph 249, TVA admits that before TVA offered the Long Term Partnership Agreement, the weighted average length of the termination notices in distributor contracts was approximately 7 years. Except as expressly admitted, the allegations of paragraph 249 are denied.

250.    TVA denies the allegations of the first sentence of paragraph 250. Answering the allegations in the second sentence of paragraph 250, TVA admits that the Long Term Partnership

Agreement is an amendment to the existing TVA Wholesale Power Contract which is an all-requirements contract. Except as expressly admitted, the allegations of paragraph 250 are denied.

251.    Denied.

252.    Denied.

253.    Denied.

254.    Denied.

255.    Denied.

256.    Denied.

## ANSWER TO PRAYER FOR RELIEF

TVA denies that Plaintiffs are entitled to the relief requested, or to any relief.

## AFFIRMATIVE DEFENSES

TVA pleads the following affirmative defenses:

### First Defense

All allegations not expressly admitted herein are denied.

### Second Defense

Plaintiffs' claims are barred by the applicable statute of limitations.

### Third Defense

Plaintiffs' claims are barred by the doctrine of laches.

### Fourth Defense

The actions taken by TVA and challenged in this Complaint were reasonable and consistent with and authorized by the TVA Act and applicable federal statutes and regulations; were reasonably related to the governmental functions carried out by TVA; and were not arbitrary, capricious, or otherwise contrary to law.

**Fifth Defense**

Because Plaintiffs lack organizational and associational standing to pursue their claims, this Court lacks subject-matter jurisdiction.

**Sixth Defense**

Plaintiffs are not third party beneficiaries of the TVA Power Contract and therefore lack standing to challenge it.

**Seventh Defense**

TVA's rate-making decisions are committed to agency discretion and are unreviewable.

**Eighth Defense**

TVA's decisions employing a least-cost planning approach are committed to agency discretion.

**Ninth Defense**

TVA reserves the right to amend its Answer as to its existing defenses and/or to assert such other and additional defenses available to it at such time and to such extent as is warranted and as may be revealed as the case progresses or when justice so requires.

WHEREFORE, TVA prays that this action be dismissed as to it and that TVA recover its costs and such other relief, legal and equitable, to which it is entitled.

Respectfully submitted,

*s/David D. Ayliffe*
David D. Ayliffe (TN BPR 024297)
Director, Litigation
Maria V. Gillen (TN BPR 030655)
Senior Manager, Litigation
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.8964
ddayliffe@tva.gov
mvgillen@tva.gov

Attorneys for Tennessee Valley Authority

106670752

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

*s/David D. Ayliffe*
Attorney for Tennessee Valley Authority