**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| PROTECT OUR AQUIFER, ALABAMA CENTER FOR SUSTAINABLE ENERGY, doing business as Energy Alabama, and APPALACHIAN VOICES, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 2:20-cv-02615-TLP-atc |
| v. | ) ) | |
| TENNESSEE VALLEY AUTHORITY, | ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING IN PART MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

Plaintiffs sue Defendant Tennessee Valley Authority ("TVA") alleging that its adoption and implementation of a new partnership agreement violated both § 831(i) of the TVA Act and the National Environmental Policy Act ("NEPA").[1] (ECF No. 1.) Following the timeline established in the Administrative Track Scheduling Order (ECF No. 24), TVA filed a certified administrative record (ECF No. 33) that contained all the "documents . . . considered by TVA" related to Plaintiffs' claims (ECF No. 33-1 at PageID 3216). The record contained eighteen documents[2] that spanned roughly 1,500 pages. (ECF No. 33-2.) About a month later, however, Plaintiffs moved to complete the administrative record—alleging that TVA excluded both the

---

[1] When the Court references the adoption of the 'new partnership agreement' or 'long-term agreement,' it is referring to the Board's vote on August 22, 2019, where it "approve[d] the implementation of a standard long-term agreement." (ECF No. 33-6 at PageID 3414.)

[2] The record index explains that those eighteen documents are divided into thirty attachments to the administrative record.

underlying factual data used to produce the long-term agreement as well as its communications with Local Power Companies ("LPCs") about the new contract program. (ECF No. 36.)

The parties fully briefed the issue (*see* ECF Nos. 44 & 47) and, for the reasons stated below, the Court **GRANTS**, in part, Plaintiffs' motion to complete the record.

### PLAINTIFFS' MOTION TO COMPLETE THE RECORD[3]

Plaintiffs argue that TVA's administrative record is incomplete because it "does almost nothing to shed light on what information TVA considered" in relation to their two claims. (ECF No. 36-1 at PageID 4775.) Instead, Plaintiffs claim that TVA's record "consists of documents memorializing recommendations and decisions" that "TVA had already made" about its long-term agreements and lack of NEPA review. (*Id*.) As a result, Plaintiffs seek an order requiring TVA to complete the administrative record with two categories of documents that they claim TVA "deliberately or negligently withheld" from the current record. (*Id.* at PageID 4776.) They request "(1) all underlying factual data and analysis the agency considered in developing and implementing the Never-ending Contract program; and (2) all external correspondence regarding the Never-ending Contract program, including correspondence relevant to the contracting parties' understanding of the change in the length of term."[4] (*Id*.) Defendants, however, contend that the record is complete and that Plaintiffs seek information unrelated to their claims. (ECF No. 44 at PageID 5050–52.)

---

[3] Plaintiffs explicitly moved to complete the record, but both parties note that the Sixth Circuit uses the phrases 'complete the rerecord' and 'supplement the record' interchangeably. (ECF No. 36-1 at PageID 4777–78 n.1; ECF No. 44 at PageID 5053–54.) As a result, this Court uses both phrases when discussing Plaintiffs' motion to complete the record.
[4] This Court will refer to what Plaintiffs call the "Never-ending Contract program" as the "long-term agreement."

2

As explained below, the Court finds that TVA must supplement the record with some of the requested documents.

## **LEGAL STANDARD**

The Administrative Procedure Act ("APA") governs judicial review of agency decisions. 5 U.S.C. § 706. That statute says a court can "hold unlawful and set aside agency action" only under certain conditions. (*Id.*) Plaintiffs here argue that this Court should set aside TVA's actions because they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observance of procedure required by law." 5 U.S.C. § 706 (A), (C)–(D).

When reviewing an agency's decision to act, courts are typically limited to the materials in the administrative record. *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). That record should "include[ ] all materials 'compiled' by the agency[ ] that were 'before the agency at the time the decision was made.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (citations omitted). That is to say, the record must include "all materials" that the agency "either directly or indirectly" considered. *In re United States Dep't of Def. & United States Envtl. Prot. Agency Final Rule: Clean Water Rule: Definition of "Waters of the United States," 80 ed. Reg. 37,054 (June 29, 2015),* No. 15-3751, 2016 WL 5845712, at *1 (6th Cir. Oct. 4, 2016).

An agency's administrative record has the "presumption of regularity," but the record is not always complete as filed. *Ohio Coal Ass'n v. Perez*, No. 14-2646, 2017 WL 4900165, at *3 (S.D. Ohio, Feb. 27, 2017). And there are some circumstances, that "justify supplementation of the administrative record" with additional information. *Latin Ams. for Soc. & Econ. Dev. v.*

3

*Adm'r of the Fed. Highway Admin.*, 756 F.3d 447, 465 (6th Cir. 2014).  For example, if the moving party presents "clear evidence" to "rebut the presumption" and "show[s] that [ ] documents . . . were before the agency decisionmaker" but are missing from the record, courts will supplement the record with those proffered documents.  *Bullwinkel v. U.S. Dep't of Energy*, No. 11-1082, 2013 WL 384902, at *2 (W.D. Tenn. Jan. 16, 2013) (quoting *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 33–34 (D.D.C. 2008).  Movants produce clear evidence that the record is incomplete when they show that "an agency has deliberately or negligently excluded certain documents from the record."  (*Id*.)

In that sense, a movant's mere allegation of an incomplete record cannot meet its burden; for, "if it did, there would be no presumption of a complete record because the possibility that internal, deliberative documents exist would occur in every APA case."  *Blue Ocean Institute v. Gutierrez*, 503 F. Supp. 2d 366, 371 (D.D.C. 2007).  Instead, the movant "must identify reasonable, non-speculative grounds for its belief that the documents were . . . not included in the record," like by attaching the allegedly relevant documents to their motion, and "prov[ing] that the documents were before the actual decisionmakers."  *Sara Lee Corp.*, 252 F.R.D. at 34.

A slightly different standard applies, however, when, as here, a court reviews an agency's decision <u>not</u> to act.  In that case, "[a] broader scope of review is necessary because there will generally be little, if any, record to review."  *Northcoast Env't Ctr. v. Glickman*, 136 F.3d 660, 665 (9th Cir. 1998).  Likewise, courts embrace a broader review of the record when an agency decides not to issue an EIS or EA under NEPA because "[t]he omission of technical scientific information is often not obvious from the record itself."  *Sierra Club v. Peterson*, 185 F.3d 349, 370 (5th Cir. 1999) (quoting *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14–15 (2d Cir. 1997).  And this added difficulty often requires "a court to look at evidence outside the administrative

record" when reviewing NEPA claims, because supplementing the record is "appropriate . . . to enable a reviewing court to determine that the information available to the decisionmaker included a complete discussion of environmental effects and alternative."[5]  *Peterson*, 185 F.3d 349 at 370 (quoting *Hoffman*, 132 F.3d at 15.)

Alternatively, when reviewing an agency's decision to act, or not to act, courts can order the agency to supplement the record when it "needs certain 'background' information to determine whether the agency has considered all relevant factors." *Latin Ams. for Soc. & Econ. Dev.*, at 756 F.3d at 465 (citing *Slater*, 120 F.3d at 638.)[6]

With these standards in mind, the Court addresses the merits of Plaintiffs' motion.

## ANALYSIS

### I.  Developing and Implementing the Long-term Agreement

Plaintiffs' request for information related to the development and implementation of the long-term agreement can be divided into two categories of documents.  First, Plaintiffs seek all "information . . . relevant to [TVA's] decision to forgo formal NEPA review." (ECF No. 36-1 at PageID 4785.  And second, they ask for TVA's "factual analysis of the [long-term agreement's] potential financial and environmental impacts," including the agreement's effect on LPC

---

[5] The Court recognizes that the Sixth Circuit has held that NEPA cases do not command "a special supplementation rule," and it is not holding that one exists here.  *Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 658 (6th Cir. 2018).  This Court is reaffirming that when an agency chooses not to act, and the record is nearly silent on that decision, reviewing courts need to take a close look at the record to ensure that the agency complied with the regulations.  *See id.*

[6] The Sixth Circuit, and courts within, also agree that courts can order an agency to supplement the record if the agency shows bad faith.  *See Little Traverse Lake Prop.*, 883 F.3d at 658 (6th Cir. 2018); *Charter Twp. of Van Buren v. Adamkus*, No. 98-1463, 1999 WL 701924, at *4 (6th Cir. Aug. 30, 1999). *Hickey v. Chadick*, No. 08-0824, 2009 WL 3064445, at *3 (S.D. Ohio Sept. 18, 2009); *Ohio Coal Ass'n v. Perez*, No. 14-2646, 2017 WL 4900165, at *3 (S.D. Ohio Feb. 27, 2017).

5

retention and the agency's load-loss. (*Id*. at PageID 4786–87.) They allege that the TVA decision makers had these factual records when they created the long-term agreement and bypassed NEPA review.

TVA, on the other hand, insists that the record is complete. Not only does it claim that the record already contains information on its load-loss and its decision to forgo NEPA analysis, but TVA contends that Plaintiffs' requests are irrelevant to their underlying claims. (ECF No. 44 at PageID 5050–52.) After reviewing the record, however, this Court disagrees.

### A.     Decision to Forgo NEPA Analysis

On Plaintiffs' request for factual information related to TVA's NEPA compliance, the Court finds that TVA must complete the record. As noted above, courts may need an expanded record when reviewing an agency's decision *not* to act. For if the record is limited, courts cannot determine whether the agency's decision was appropriate. Likewise, here, the Court finds that the record lacks any meaningful information about TVA's decision not to conduct a NEPA review; and therefore, it requires TVA to supplement the record with more substance.

For starters, the record contains little to no information on TVA's decision not to issue an EIS or EA under NEPA. The only document in the record related to that decision is a two-page, conclusory memorandum. (ECF No. 33-26.) In it, TVA explains that it orally decided not to conduct a NEPA analysis, and that it did so because the long-term agreement was only a rate adjustment, not a rate change. (ECF No. 44 at PageID 5058–59.) And because of this classification, TVA decided that the long-term agreement "did not have an impact on the environment." [7] (*Id*. at PageID 5059; *see also* ECF No. 33-29 at PageID 4640.)

---

[7] TVA further contends that it does not conduct a NEPA review for rate adjustments because adjustments "fall within the ambit of existing rate policies, i.e. a rate adjustment constitutes the mere implementation of an earlier decision." (ECF No. 33-26 at PageID 4234.) It may,

To bolster its claim that rate adjustments do not cause environmental impacts, TVA points to its proposed categorical exclusions booklet (ECF No. 33-29) highlighting its experience in rate changes and rate adjustments. In that booklet, TVA recounts many past rate *changes* that, after environmental studies, had insignificant impacts on the environment. (*See id.* at PageID 4642–43.) But this recitation of past experience is not determinative of future reality. Just because TVA can point to *rate changes* in the past that did not impact the environment does not mean that all future *rate adjustments* cannot have significant environmental effects. As a result, TVA's reference to the categorical exclusions booklet is not determinative of the issue at hand.

In fact, TVA's claim that the long-term agreement did not impact the environment because it was a rate adjustment creates more questions than answers. For example, nowhere does TVA explain why rate adjustments cannot threaten the environment; who decides whether a new policy is a rate change or a rate adjustment; when TVA decided that the agreement was only an adjustment; or what evidence TVA relied on in making that decision. (*See* ECF No. 33-26; ECF No. 33-29 at PageID 4639–47.)[8]

---

however, abide by NEPA when making a rate change "to the extent the environmental consequences of a proposed rate change design can be ascertained without indulging in speculation." (*Id*.) TVA adds that it does not conduct NEPA reviews for rate adjustments because the environmental impacts of rate adjustments are too "speculative." (*See id.* at PageID 4234–36.) But again, TVA does not explain what, inherently, makes the effects of rate adjustments too speculative to calculate. This is a particularly confusing argument because TVA often makes predictions that some may see as speculation. For example, as part of the record, TVA filed its Integrated Resource Plan and the accompanying EIS—two documents that spanned twelve attachments and 744 pages (ECF Nos. 33-14–33-25)—outlining six "possible futures," and five strategies to address each future, that may occur over the next twenty years (ECF No. 33-14 at PageID 3501.) Considering TVA's ability to predict or speculate, the Court questions TVA's alleged inability to estimate the environmental impact of the so-called rate adjustment here.

[8] It is unclear whether TVA is referring to the long-term agreement, in its entirety, or only the bill-credit portion of the agreement, as a rate adjustment in its "memorandum to file." (ECF No. 33-26.) If the former is true, TVA provides no insight on why it declined to conduct a NEPA analysis on the impact of the twenty-year contract term and the accompanying twenty-year

7

As a result, the Court finds that the record is incomplete. The Court also finds that it would benefit from having more information about TVA's NEPA decision for its own background and so it can properly address the merits of Plaintiffs' claims. The Court therefore **ORDERS** that TVA complete the record with any factual information and analysis about both its decision to forgo NEPA analysis for the long-term agreement and its decision to designate the agreement as a rate adjustment instead of a rate change.

### B. Decision to Omit Documents on Financial and Environmental Impacts

Plaintiffs' request for information about TVA's development and implementation of the long-term agreement follows a similar thread of analysis. For instance, Plaintiffs alleges that TVA included no information on how the long-term agreement may affect its power generation, operation, and load-loss; which, in turn, may impact the environment. (ECF No. 36-1 at PageID 4786–87.) But TVA's Board meeting presentation on August 22, 2019 (ECF No. 33-4), along with the recording from that meeting (*see* ECF No. 36-1 at PageID 4786–87),[9] allegedly suggests that the Board made a calculated decision to adopt the long-term agreement. And that the Board's decision was based, in part, on "ensur[ing] that TVA has the revenue necessary to satisfy its long-term financial obligations." (ECF No. 44 at PageID 5057.)

But without a full record of the analysis that led to the long-term agreement, and without information about how the agreement impacts TVA's load-loss, the Court lacks the necessary information to address the merits of Plaintiffs' NEPA claim properly. Plaintiffs' point is well-

---

termination notice provision. The Court needs more information on this point so that it can better address the merits of Plaintiffs' NEPA claim.

[9] TVA submitted the minutes (ECF No. 33-5), a Board slide-show presentation (ECF No. 33-4), and text of the resolutions the Board voted on (ECF No. 33-6) from this meeting, but it did not submit the video or its transcript. The Court orders that TVA file the transcript for the August 22, 2019, TVA board meeting.

taken. Because the Court needs more information about the decision, it finds that the record is incomplete. The Court therefore **ORDERS** TVA to supplement the record with factual information related to its Board's decision to adopt the long-term agreement, including information—whether supportive of or antagonistic to the Board's decision—that TVA gathered, compiled, or used before the Board's decision. This supplemental factual information should also include financial records—like potential revenue or load-loss estimations or scenarios that TVA calculated in anticipation of the Board's decision—associated with the long-term agreement.

## II.     External Correspondence on the Long-term Agreement

Plaintiffs request that TVA complete the record by including the agency's communication with LPCs about the long-term agreement. They allege that these conversations occurred with TVA decision makers, before TVA adopted and implemented the long-term agreement, and before TVA's decision to forgo NEPA analysis. (ECF No. 36-1 at PageID 4792–94.) To support these claims, Plaintiffs submitted email chains gathered from public record disclosures. (*See* ECF Nos. 37 & 38.). These email exchanges are between TVA executives and LPC representatives.[10] (*Id.*) Plaintiffs argue that the existence of these emails along with TVA's failure to include them in the administrative record show that TVA "deliberately or negligently withheld" the communications from the record. (ECF No. 36-1 at PageID 4791.)

---

[10] Plaintiffs also submitted email exchanges between LPCs and Tennessee Valley Public Power Association ("TVPPA"), messages between different LPCs, and a text document with a "summary of notes." (ECF No. 37-3 at PageID 4915–22, 4927–30; ECF Nos. 38-4–38-6.) However, Plaintiffs have not met their burden to show that these documents were before the agency decision makers when they decided. As a result, this Court finds that these documents do not belong in the administrative record.

In response, TVA argues that the proffered communications are not relevant to Plaintiffs' claims and should not be in the record. (ECF No. 44 at PageID 5055.) More specifically, TVA claims that the emails do not belong in the record because they "merely illustrate a contract negotiation in progress," and do not relate to Plaintiffs' claims about the TVA act or TVA's NEPA process. This Court finds, however, that the emails are relevant here.

For starters, the Court finds that Plaintiffs' proffered email from TVA's CEO Jeffrey Lyash dated July 29, 2019 (ECF No. 37-3 at PageID 4908, 4910–13; ECF No 38-2 at PageID 5007–11) belongs in the administrative record. The email itself acknowledges that TVA decision makers received, and incorporated, feedback from LPCs before adopting and implementing the long-term agreement. What is more, the email is relevant to both of Plaintiffs' claims. On the one hand, the email shows that the TVA decision makers considered the LPC's resistance to TVA's long-term agreement—both generally and on the twenty-year provision specifically—before they approved the agreement. And on the other hand, the LPC feedback informed TVA of the potential consequences of adopting the long-term agreement. The LPC's requested changes to the long-term agreement, and TVA's response, may impact TVA's contract retention; and, in turn, its load-loss and operational costs—which relates to Plaintiffs' NEPA claim.

And for similar reasons, the Court finds that Plaintiffs' proffered email from Daniel Pratt, TVA's Vice President of Customer Delivery, on January 24, 2020, also belongs in the administrative record. (ECF No. 36-3 at PageID 4924–25; ECF No. 38-9 at PageID 5037–38.) Although this message post-dates the TVA Board's approval of the long-term agreement, it references how TVA incorporated LPC feedback in two revisions of the long-term partnership proposal and partnership amendment. These post-decision communications are still relevant to

both Plaintiffs' TVA Act claim—as it underscores TVA's flexibility when deciding to adopt and implement the evergreen provision—and NEPA claim—as the eventual environmental impact of the long-term agreement could fluctuate based on the LPC's feedback.

The Court finds that Plaintiffs, by proffering relevant communications that TVA decision makers considered at the time of the decision, have rebutted the presumption of regularity about these TVA decisions and have shown that the record is incomplete. As a result, the Court finds that the administrative record should include the referenced emails from Jeff Lyash and Daniel Pratt. The Court therefore **ORDERS** TVA to complete the record with any other communications from TVA decision makers to LPCs about the long-term agreement on or before its adoption. The Court also **ORDERS** TVA to supplement the record with communications from its decision makers to LPCs, after TVA adopted the long-term agreement, that relate to any developments, revisions, or changes to the long-term agreement.[11]

---

[11] Plaintiffs also request that TVA produce a privilege log because "TVA has thus far provided no accounting of materials it has excluded from the record, neither plaintiffs nor the Court can know the extent of what has been excluded." (ECF No. 36-1 at PageID 4794.) Although courts have found that production of a privilege log may be appropriate, as here, when movants "overcome, with clear evidence, the presumption of regularity . . . by showing bad faith *or other exceptional circumstances*," Plaintiffs have not shown a need for a privilege log. *Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 123 (D.D.C. 2014) (emphasis added). "[P]rivileged and deliberative materials are not part of the administrative record as a matter of law" and courts should not order an agency to create a privilege log unless exceptional circumstances exist. (*Id.*) While this Court found that the record here is incomplete, it is only because TVA negligently excluded some documents from the record and because this Court requires additional background information to address the merits of Plaintiffs' claims. Plaintiffs have not shown that the agency is not trustworthy to "disclose information adverse to it" or that it requires a "check" on its disclosures. (*See* ECF No. 36-1 at PageID 4794 (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 793 (D.C. Cir. 1984)). Without this showing, and because TVA need not disclose privileged documents or produce a privilege log in the administrative record, the Court does not require TVA to submit a privilege log here.

## **CONCLUSION**

As explained in detail above, the Court finds that the administrative record is incomplete and **ORDERS** that TVA complete the record with: (1) any factual information and analysis about foregoing the NEPA analysis for the long-term agreement; (2) designating the agreement as a rate adjustment instead of a rate change; (3) any factual information related to the potential revenue or load-loss estimations or scenarios associated with the long-term agreement; (4) the July 29, 2019, email from Jeffrey Lyash to LPCs; (5) the January 24, 2020, email from Daniel Pratt to LPCs; (6) any communications from TVA decision makers to LPCs about the long-term agreement on or before its adoption on August 22, 2019;  and (7) any communications from TVA decision makers to LPCs, after TVA adopted the long-term agreement, that relates to the Board's decision to adopt the long-term agreement, and any developments, revisions, or changes to the agreement.

**SO ORDERED**, this 24th day of January, 2022.

                                           s/Thomas L. Parker
                                           THOMAS L. PARKER
                                           UNITED STATES DISTRICT JUDGE