IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| PROTECT OUR AQUIFER, ENERGY ALABAMA, Doing Business as Energy Alabama, and APPALACHIAN VOICES, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:20-cv-02615-TLP-atc |
| v. | ) ) | |
| TENNESSEE VALLEY AUTHORITY, | ) ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO RECONSIDER AND CLARIFYING ORDER TO COMPLETE THE ADMINISTRATIVE RECORD**

Earlier this year, this Court ordered TVA to complete the administrative record with seven sets of documents. (*See* ECF No. 53.) And a few weeks later, TVA moved this Court to reconsider its decision about one of those document sets—the communications between TVA decision makers and local power companies after August 22, 2019, that related to the long-term agreement. (ECF No. 54.) TVA argues that the Court committed clear error in ordering these documents to be produced. That is, TVA claims that the administrative record can only contain the documents before the agency when the Board voted to adopt the long-term agreement on August 22, 2019. In response, Plaintiffs contend that the Board's vote was not the relevant final agency action. (ECF No. 59.) Instead, they argue that "each of the 130-plus [long-term agreements] the utility has signed since August 22, 2019 [was] a 'final agency action' that is reviewable by this Court[.]" (*Id.* at PageID 5225.)

After reviewing the relevant case law, and the parties' filings, the Court agrees with Plaintiffs. As a result, the Court **DENIES** TVA's motion to reconsider and **CLARIFIES** its previous order to complete the administrative record (ECF No. 53).

## **LEGAL STANDARD**

A district court has the inherent power to reconsider, rescind, or modify an interlocutory order before entry of a final judgment. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945–46 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Under Federal Rule of Civil Procedure 54(b), a court may revise "any [interlocutory] order or other decision . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.").

Courts revise interlocutory orders only when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville Jefferson Cnty. Metro. Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez*, 89 F. App'x at 959).

The Local Rules for this Court also help explain the limits on motions for reconsideration. Under Local Rule 7.3, a motion to revise an interlocutory order must show:

(1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or

(2) the occurrence of new material facts or a change of law occurring after the time of such order; or

>   (3)   a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

W.D. Tenn. R. 7.3(b).

Additionally, "[m]otions 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *In re Regions Morgan Keegan Secs., Derivative, and ERISA Litig.*, No. 07–2784, 2010 WL 5464792, at *1 (W.D. Tenn. Dec. 30, 2010) (quoting 11 Charles Alan Wright et al*., Federal Practice and Procedure* § 2810.1 (2d ed. 1995)). Although a court "can always review its prior rulings before the termination of a case," it "should not do so in the vast majority of instances, especially where such motions merely restyle or rehash the initial issues." *In re Southeastern Milk Antitrust Litig.*, No. 2:08–MD–1000, 2011 WL 3793777, at *1 (E.D. Tenn. Aug. 25, 2011) (internal quotation marks omitted).

## **ANALYSIS**

To address TVA's motion for reconsideration, the Court must answer a central question: what is the final agency action at issue?[1] For, without establishing the agency action in dispute, the Court cannot opine on whether it erred when issuing its order granting Plaintiffs' motion to complete the administrative record. With that in mind, the Court next outlines the standard for determining when an agency action is final for review under the Administrative Procedure Act ("APA"), reiterates the parties' positions on the matter, and applies the standard to the facts at hand.

---

[1] Under the Administrative Procedure Act, an agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13).

"To state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court." *Bangura v. Hansen*, 434 F.3d 487, 500 (6th Cir. 2006) (citing 5 U.S.C. § 704). And to be considered "final," an agency action must meet two criteria. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). To be "final," an "action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) be an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Arizona v. Biden*, No. 22-3272, 2022 WL 2437870, at *7 (6th Cir. July 5, 2022) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016)); *see also Biden v. Texas*, 597 U.S. ——, 2022 WL 2347211 at *13 (2022); *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 633 (6th Cir. 2016).

Under the first prong, actions that are "merely tentative or interlocutory [in] nature" will not constitute final agency decisions. *Bennett*, 520 U.S. at 178. This requirement ensures "that judicial review of the action would [not] 'disrupt the orderly process of adjudication.'" *Berry*, 832 F.3d at 633 (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). And "[a]n agency action is not final if it is only 'the ruling of a subordinate official[.]'" *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967)). As for the second prong, an action determines the rights of a party or causes legal consequences when it "ha[s] a 'sufficiently direct and immediate' impact on the aggrieved party and a 'direct effect on [its] day-to-day business.'" *Berry*, 832 F.3d at 633 (quoting *Abbott Laboratories*, 387 U.S. at 152).

In assessing an agency's action therefore, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin*, 505 U.S. at 797.

As noted above, TVA argues that the final agency action relevant here was its Board's vote approving a standard long-term agreement "consistent with the Standard Elements" and authorizing its CEO to "implement and change, with oversight, the Standard Elements" for agreement with LPCs.  (ECF No. 33-6 at PageID 3414; *see also* ECF No. 54-1 at PageID 5190–96.)  It claims that the Board's approval "represented the completion of the decision-making process as to TVA's offer of a monthly bill credit 'to those LPCs that agree[d] to extend the termination notice requirement to 20 years.'"  (ECF No. 54-1 at PageID 5191 (quoting ECF No. 33-5 at PageID 3401.))  TVA also argues that, contrary to what Plaintiffs alleged in their complaint, the implementation of the long-term agreements cannot constitute a final agency action because implementation is a continuous process, not a pinpointable "discrete agency action."  (*Id.* at PageID 5195.)

Plaintiffs counter that TVA completed a final agency action by signing each long-term agreement, not by implementing them.  (ECF No. 59 at PageID 5233–36.)  They agree with TVA that the Board vote to approve the long-term agreement was a "critical step" in the process, but note that "entering into [the long-term agreements] marks the consummation of [the] decision-making process" and "create[ed] legal consequences for both parties."  (*Id.* at PageID 5234.)  To emphasize this point, Plaintiffs point out that TVA's "entry into the contracts" formed the "basis for the[ir] [TVA Act] claim[.]"  (*Id.* at PageID 5229.)

If an agency changes its internal operating procedures without impacting its operation, causing inherent legal consequences, or automatically altering its relationship with third parties, was the change a final agency action?  The Court, in agreeing with Plaintiffs, finds that the answer is no.  For Plaintiffs' TVA Act claim, its entry into each long-term agreement is a

5

separate final agency action.[2] And the Court reaches this conclusion because both prongs of the *Bennett* test are met when TVA signs a long-term agreement with a LPC.

For starters, signing a contract is not a "tentative or interlocutory" action, but one that consummates the "decisionmaking process[.]" *Bennett*, 520 U.S. at 178. When both parties sign the contract, it obligates them to fulfill a definite and tangible set of commitments. Once the parties sign the agreement, these obligations are unequivocal, certain, and identifiable—there is nothing tentative or interlocutory about a signed agreement. The Board's vote to approve the "implementation of a standard long-term Agreement," on the other hand, did not, itself, guarantee that the LPCs or that TVA would execute said agreements. (ECF No. 33-6 at PageID 3414.) Instead, the Board voted to provide TVA's CEO with some discretion in implementing and amending the agreement, paving the way for the CEO and LPCs to negotiate the details of each contract. Additionally, the long-term agreement even specifies that the contract comes into effect "on the date of TVA's signature." (*See id.* at PageID 3419–23.) This provision ensures that the consummation of the decision-making process occurs only when both parties sign the agreement. (*See id.*) As a result, the Court finds that TVA's execution of each agreement satisfies the first *Bennett* prong.

---

[2] To decide TVA's motion to reconsider, the Court need only address Plaintiffs' TVA Act claim. The Court acknowledges, however, that the parties dispute the final agency action related to Plaintiffs' NEPA claim. That is, TVA argues that the final agency action relevant for that claim occurred when "the Manager of TVA's NEPA program" issued a memo, suggesting that the agency did not need to perform an environmental review for the bill credit component of the long-term agreement. (ECF No. 54-1 at PageID 5193.) Plaintiffs contend, however, that their NEPA claim relates to the agreement's twenty-year contract term and its evergreen provision, not the bill credit. (ECF No. 59 at PageID 5229.) This dispute, coupled with the knowledge that TVA later completed an environmental analysis on the long-term agreement's flexibility proposal in June 2020, complicates the discussion of TVA's final agency action relating to Plaintiffs' NEPA claim. This dispute will be relevant at the summary judgment stage and the Court urges the parties to clarify their positions on this point.

Additionally, TVA's entry into the long-term agreements with LPCs "determine[d] rights and obligations," and "caused legal consequences," that affected the parties here. *Berry v. U.S. Dep't of Labor*, 832 F.3d at 633. As at least one district court has found, in discussing final agency actions under the APA, "determine[ing] rights and obligations" that "ha[ve] legal consequences" is "precisely what contracts do." *Alabama v. U.S. Army Corps of Engineers*, 382 F. Supp. 2d 1301, 1324 (N.D. Ala. 2005). The contracts between TVA and the LPCs also impacted Plaintiffs in a "direct and immediate" way. *Abbott Laboratories*, 387 U.S. at 152. This Court found that Plaintiffs have standing to bring claims of economic and environmental harm against TVA because of its long-term agreements with LPCs. (*See* ECF No. 48 at PageID 5083–94.) And the harms that Plaintiffs allege—like the diminished ability to purchase affordable, renewable energy in a competitive marketplace and the effects of dirty energy generation on the environment—are triggered only by TVA's entry into the power supply contracts with LPCs. (*See* ECF No. 17 at PageID 1255–60.) Without the signed contracts, Plaintiffs would not feel the effect of these alleged harms. The Court finds therefore that TVA's execution of each agreement also satisfies the second *Bennett* prong.

Think of it this way: for something to be a final agency action, the agency's decision must have some sort of tangible or legal effect on it or others. But here, when TVA's Board voted to approve the implementation of a standard long-term agreement, the vote had no effect. The only way that the Board's vote would affect it, or a third party, was if TVA entered a contract with an LPC. In theory, TVA's Board could have adopted the long-term agreement but then failed to convince any LPC to sign it. And in that world, the Board's vote would have neither determined rights and obligations nor imposed legal consequences. TVA needs LPCs to sign the long-term agreement for the contracts to have any impact. In that vein, it makes sense

7

that the relevant final agency actions here occurred when TVA entered into a long-term agreement with each LPC.[3]

Because both prongs of the *Bennett* test are met, the Court finds that the relevant final agency action here occurred each time that TVA and a LPC signed a long-term power supply contract.[4]

Now that the Court has addressed the relevant final agency action as it relates to Plaintiffs' TVA Act claim, the Court turns to TVA's motion to reconsider. And because the Court finds that TVA's entering into each long-term agreement constituted a final agency action, the Court **DENIES** its motion for reconsideration. At the same time, and with the final agency action in mind, the Court **CLARIFIES** the types of documents that TVA must provide in accordance with its previous order to complete the administrative record (ECF No. 53). As to the seventh set of documents, the Court **ORDERS** that TVA complete the record with any

---

[3] The Court makes no finding about whether a vote of the TVA Board could be a final agency action. But, for this case, and for Plaintiffs' TVA Act claim, the Court finds that the most relevant final agency action relates to TVA's entry into each long-term agreement with the LPCs.

[4] The Court acknowledges that applying the 'final agency action' standard to TVA's decision to enact a long-term power supply contract is difficult. There are few cases that evaluate an agency's contracting powers under this framework. But as the parties conceded during the hearing on this motion (ECF No. 63), TVA is unlike most federal agencies. Besides the inherent uniqueness of the agency, the TVA Act was enacted before the APA and predates the modern administrative state. In fact, had the TVA Act been drafted later, its language may be different. For example, in 1980 Congress passed the Pacific Northwest Electric Power Planning and Conservation Act; which, in part, explicitly defined several actions taken by the Bonneville Power Administration as final agency actions subject to judicial review. One said action was executing a power sale contract with local power companies. (*See* 16 U.S.C. §§ 839f, 839c). And if those oversight provisions were in the TVA Act, there would be no question about the relevant final agency action here. Is it time for Congress to take another look at the powers delegated to TVA and at the type of oversight that it intended to afford the agency?

communications from TVA decision makers to LPCs, related to the adoption and negotiation of the long-term agreement, through the date that both parties signed the long-term agreement.[5]

## CONCLUSION

For the reasons stated above, the Court **DENIES** TVA's motion to reconsider and **CLARIFIES** its order to complete the administrative record.

**SO ORDERED**, this 14th day of July, 2022.

    s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[5] At the reconsideration motion hearing, TVA also noted that another category of documents that the Court ordered it to include—a January 24, 2020, email from Daniel Pratt to LPCs—post-dated the final agency action and should not be admitted into the record. The Court finds, considering the discussion above, that Daniel Pratt's email should be included in the administrative record so long as it was sent to an LPC that entered into a long-term agreement after Pratt's email.