UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

PROTECT OUR AQUIFER,
ENERGY ALABAMA, and
APPALACHIAN VOICES,
Plaintiffs,

v.                                                                    No.2:20-cv-02615-TLP-atc
                                                                      (Oral Argument Requested)

TENNESSEE VALLEY AUTHORITY,
Defendant.

---

**TVA'S RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

David D. Ayliffe,
Director, Litigation
Steven C. Chin
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.8964
ddayliffe@tva.gov
scchin@tva.gov

Pursuant to Federal Rule of Civil Procedure 56 and in accordance with Local Rule 56.1, Tennessee Valley Authority ("TVA"), for purposes of this action only, responds and objects as follows to Plaintiffs' Statement of Additional Facts in Support of Motion for Summary Judgment (Doc. 80-2).

1. Conservation Groups incorporate by reference each of the facts set forth in Plaintiffs' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment. (Doc. 74-2.)

**RESPONSE:** TVA incorporates by reference each response as set forth in TVA's Response to Plaintiffs' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Doc. 79).

2. At the August 22, 2019 TVA Board meeting, TVA's Chief Executive Officer, Jeff Lyash, identified three elements that would set TVA's direction for the future: the IRP, the 10-year financial plan, and the Long-term Agreement proposal. (Doc. 73, PageID#5423.)

**RESPONSE:** Undisputed.

3. The Long-term Agreement proposal grew out of TVA's desire to "better align the decision timeframes for TVA's generation assets, 'which are 20, 30, 40 year decisions, with the contract terms we have with our LPCs.'" (Doc. 75, PageID#6672 [quoting TVA's Chief Executive Officer]; see also Doc. 73, PageID#5423.)

**RESPONSE:** Undisputed.

4. After the CEO's presentation, TVA's Chief Financial Officer, John Thomas, updated the Board on the 10-year financial plan explaining TVA's responsibility to balance its debt and 20 to 30-year generation asset commitments with revenue commitments sufficient to satisfy those obligations, and he explained how "this was the genesis of the long-term partner proposal." (Doc. 73, PageID#5423.)

**RESPONSE:** Undisputed, however the correct citation to the record should be Doc. 73 at PageID#5424.

5. TVA has acknowledged that the analysis it performed for the 2019 Integrated Resource Plan informed the agency's understanding of how load loss, including the load loss associated with Memphis Light, Gas & Water or other distributors leaving its service territory, would affect its resource plans. Specifically, in a Frequently Asked Questions document posted on TVA's website, TVA states:

> Given that Memphis Light, Gas and Water (MLGW) is studying options to replace/leave TVA, is TVA adding a scenario in the IRP that addresses an exit by MLGW?
>
> TVA did not specifically study this potential situation, but it did model a load loss scenario as a proxy for any type of load loss of this scale to better understand how outcomes from each strategy could be affected by large load loss.

TVA, 2019 IRP Frequently Asked Questions 14, https://tva-azr-eastus-cdn-ep-tvawcm-prd.azureedge.net/cdn-tvawcma/docs/default-source/default-document-library/site-content/environment/environmental-stewardship/irp/2019-documents/faqs-updatedfinal.pdf?sfvrsn=ed8d8716_4, (last accessed November 4, 2022).

**RESPONSE:** Disputed. Pursuant to Fed. R. Civ. P. 56(c)(2) and Fed. R. Evid. 106 and 402, TVA objects to Plaintiffs' Statement of Additional Facts ("SOAF") 5 because it mischaracterizes the cited materials and is irrelevant. As set forth in TVA's 2019 IRP and EIS Frequently Asked Questions, the question referenced in SOAF 5 was from a February 26, 2019 Webinar to which TVA responded by stating that "TVA did not specifically study" the potential situation of MLGW replacing or leaving TVA. (Second Supp. AR248 at 10084.) (Attach. 1) Rather, in 2019 IRP, TVA studied a scenario with a large load loss to "better understand how outcomes from each strategy could be affected by large load loss." (*Id.*) Nowhere in TVA's response does TVA state that it performed the analysis for the 2019 IRP with the specific scenario of losing MLGW as a customer.

3

Pursuant to Fed. R. Evid. 402, TVA further objects because the referenced scenario, Rapid DER, "studied in the IRP are hypothetical actions taken by TVA under potential future scenarios." *See Ctr. for Biological Diversity v. TVA*, No. 3:18-CV-1446-LCB, 2021 WL 9440638, at *2 (N.D. Ala. Aug. 12, 2021).

6.   TVA expressly disclaimed application of any categorical exclusion to Long-term Agreements in response to a comment on the environmental assessment for the so-called "Flexibility Option" in June 2020:

> TVA did not apply a categorical exclusion for the Board's decision in 2019 to approve the terms of a standard long-term agreement to be entered into between TVA and interested LPCs. This was because, for the reasons provided above under responses to Comments 26 and 27, the Board's decision to approve the terms of a standard long-term agreement was not subject to NEPA review.

(Doc 33-28, PageID#4304 [AR001085].)

**RESPONSE:** Disputed. Pursuant to Federal Rule of Civil Procedure 56(c) and Fed. R. Evid. 106, TVA objects to SOAF 6 because it mischaracterizes the cited materials and is materially incomplete. SOAF 6 references comment No. 28, which was submitted by Plaintiffs' counsel, Amanda Garcia, during the e 30-day comment period for the draft Environmental Assessment. The full text of TVA's response to Ms. Garcia's comment is set forth below:

> *Response:* TVA did not apply a categorical exclusion for the Board's decision in 2019 to approve the terms of a standard long-term agreement to be entered into between TVA and interested LPCs. This was because, for the reasons provided above under responses to Comments 26 and 27, the Board's decision to approve the terms of a standard long-term agreement was not subject to NEPA review. The Board's 2019 decision merely committed TVA to negotiate in good faith with LPCs to provide additional power supply flexibility. These negotiations with LPCs ripened into a concrete flexibility proposal which was then approved by the Board in February 2020 subject to satisfactory completion of any required environmental reviews.

(Doc. 33-28 at PageID#4304.) Thus, TVA's Response must be read in conjunction with the responses to Comments 26 and 27 wherein TVA makes clear that TVA "did not apply a categorical

exclusion for the Board's decision in 2019 to approve the terms of a standard long-term agreement" (Doc. 33-28 at PageID#4304), because of TVA's final NEPA determination that the Board's decision "was not subject to NEPA review" at all (*id.* at PageID##4302–04). Accordingly, SOAF 6 is disputed because TVA did not "disclaim" the categorical exclusions; rather, TVA found that the TVA's final NEPA determination made application of the categorical exclusions unnecessary.

7. In TVA's 1983 NEPA procedures, Categorical Exclusion 6 is described as "Contracts or agreements for the sale, purchase, or interchange of electricity." (Doc. 75, PageID#6728.)

**RESPONSE:** Undisputed.

8. TVA NEPA staff understand that Categorical Exclusion 6 does not apply to "transactions that spur expansion or development of facilities." (Doc 33-29, PageID#4353 [AR001134].)

**RESPONSE:** Undisputed for purposes of TVA's motion for summary judgment on Plaintiffs' NEPA claim.

9. In explaining why TVA was not amending Exclusion 6 in its 2020 NEPA regulations, TVA stated:

> In the Proposed Rule published in June 2017, TVA proposed revising the existing CE in order to clarify that such transactions that spur expansion or development of facilities and transmission infrastructure would not be categorically excluded. Upon further internal deliberation, however, TVA determined that no clarification was needed, as staff shared that understanding of the existing CE.

(Doc 33-29, PageID#4353 [AR001134].)

**RESPONSE:** Undisputed.

10. In TVA's 1983 NEPA procedures, Categorical Exclusion 27 is described as "Any action which does not have a primary impact on the physical environment." (Doc. 75, PageID#6729.)

5

**RESPONSE:** Undisputed.

11.  TVA eliminated Exclusion 27 when it adopted its 2020 NEPA regulations. (Doc 33-29, PageID#4681 [AR001462].)

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c) and Fed. R. Evid. 402, the fact that Exclusion 27 was eliminated when TVA published its 2020 NEPA regulations is irrelevant to Plaintiffs' NEPA claim because the 1983 NEPA procedures, including Categorical Exclusion 27, remained in effect and applied to TVA's final NEPA determination in August 2019, that the LTA Amendments were "not subject to review under NEPA" and that "no purpose would be served by conducting a NEPA review" (EA or EIS).  (NEPA Mem., Doc. 33-26 at PageID##4235–36.) That TVA subsequently eliminated Exclusion 27 in April 2020 is irrelevant. 85 Fed. Reg. 17,434 (Mar. 27, 2020) (codified at 18 C.F.R. pt. 1318 (Apr. 27, 2020)). Subject to these objections, SOAF 11 is undisputed.

12.  TVA's rationale for eliminating Exclusion 27 was:

> This CE is broad in scope and TVA NEPA staff has observed that the CE's definition has caused confusion over the years. Because its definition lacks specificity, the CE could be inappropriately or inconsistently applied by TVA staff. For instance, some staff may not understand what typically constitutes a "primary" impact on the physical environment, given the word "primary" to describe an impact is not clearly defined in the context of NEPA and CEQ regulations.

(Doc 33-29, PageID#4681 [AR001462].)

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c) and Fed. R. Evid. 402, the fact that Exclusion 27 was eliminated when TVA published its 2020 NEPA regulations is irrelevant to Plaintiffs' NEPA claim because the 1983 NEPA procedures, including Categorical Exclusion 27, remained in effect and applied to TVA's final NEPA determination in August 2019, that the LTA Amendments were "not subject to review under NEPA" and that "no purpose would be served by conducting a NEPA review" (EA or EIS).  (NEPA Mem., Doc. 33-26 at PageID##4235–36.) That

TVA subsequently eliminated Exclusion 27 in April 2020 is irrelevant. 85 Fed. Reg. 17,434 (Mar. 27, 2020) (codified at 18 C.F.R. pt. 1318 (Apr. 27, 2020)).

Pursuant to Fed. R. Civ. P. 106, TVA further objects to SOAF 11 because it is incomplete in that it contains only a portion of TVA's explanation for the elimination of Exclusion 27, the full text of which is set forth below:

> This CE is broad in scope and TVA NEPA staff has observed that the CE's definition has caused confusion over the years. Because its definition lacks specificity, the CE could be inappropriately or inconsistently applied by TVA staff. For instance, some staff may not understand what typically constitutes a "primary" impact on the physical environment, given the word "primary" to describe an impact is not clearly defined in the context of NEPA and CEQ regulations). As discussed above, TVA proposes to establish CEs that are specific and clearly defined to improve clarity and ensure that CEs are applied appropriately.

(Doc. 33-29 at PageID#4681.) TVA objects to and disputes any implication that Exclusion 27 could be inappropriately or inconsistently applied in the context of TVA's final NEPA determination on August 19, 2019, and such implications have not been supported by any citation to the record. Subject to these objections, SOAF 12 is undisputed.

13. As of October 2022, TVA has executed the Long-term Agreement with 147 distributors. (Doc. 73, PageID#5427.)

**RESPONSE:** Undisputed.

14. TVA has returned over $500 million in bill credits to LPCs participating in the LTA through June 30, 2022.

    a. $14 million for the year ending on September 30, 2019.
    b. $163 million for the year ending on September 30, 2020.
    c. $189 million for the year ending on September 30, 2021.
    d. $141 million for the nine months ending on June 30, 2022.

(Doc. 73, PageID#5427-28 [citing TVA 2021 Form 10-K at 138; TVA, Quarterly Report (Form 10-Q) (August 2, 2022) at 40].)

**RESPONSE:** Undisputed.

Respectfully submitted,

*s/David D. Ayliffe*
David D. Ayliffe, (TN BPR 024297)
Director, Litigation
Steven C. Chin (TN BPR 030011)
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.8964
ddayliffe@tva.gov
scchin@tva.gov

Attorneys for Tennessee Valley Authority

115123526

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

<u>s/David D. Ayliffe</u><br>
Attorney for Tennessee Valley Authority